UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:25-cr-238 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Derrick Watkins, | |
| Defendant. | |

## I.  INTRODUCTION

Defendant Derrick Watkins seeks to suppress evidence seized during a search of an apartment in which he resided.  (Doc. No. 20).  The government filed a brief in opposition to the motion, (Doc. No. 27), and Watkins filed a brief in reply.  (Doc. No. 32).  I granted Watkins's request for an evidentiary hearing, which occurred on February 4, 2026.  (*See* non-document entry dated Dec. 15, 2025).  The parties then submitted additional briefing after the hearing.  (Doc. Nos. 38, 39, 40).  For the reasons stated below, I deny Watkins's motion.

## II.  BACKGROUND

On May 22, 2024, Watkins and two other individuals were on the porch of a house on Elmwood Avenue, in Toledo, Ohio.  (Doc. No. 20-1 at 1).  Shots were fired near a property on the other side of the road, hitting the two individuals on the porch with Watkins.  (*Id.*).  Watkins was able to drive the two to a hospital, where they were admitted for treatment of their injuries.  (*Id.*).

At the time of the shooting, Watkins was serving a mandatory three-year term of post-release control with the Ohio Adult Parole Authority ("APA") due to a 2022 felony assault conviction in the Lucas County, Ohio Court of Common Pleas.  (*Id.*; Doc. No. 27-2 at 7-8). Watkins called Joshua Kizer, his supervising officer with the APA, from the hospital to report the incident, as required by the terms of his supervision.  (*See* Doc. No. 27-3 at 1).  When Kizer did not answer, Watkins left a voicemail stating that he and two friends had been shot at, that he took the two to the hospital, and that he had spoken with law enforcement about the shooting.  (Doc. No. 37 at 47-48).  The following morning, Kizer met with Watkins at Kizer's office, where Watkins relayed the same information.  (*Id.* at 52-54).

Later that afternoon, Kizer reviewed a Toledo Police Department report summarizing the investigation into the previous day's shooting.  (*Id.* at 50-52, 54-56).  Kizer learned then that officers had found rifle shell casings on the porch, leading them to suspect someone had returned fire.  (*Id.* at 51-52); (Doc. No. 20-1 at 1).  Officers obtained a search warrant for the residence and recovered a rifle and additional shell casings inside.  (Doc. No. 20-1 at 1).

This information caused Kizer concern because Watkins did not mention anything about a firearm or ammunition at the property or that someone shot back at the initial assailants.  He suspected Watkins omitted this information because Watkins, as the only uninjured person, was the one who returned fire.  (Doc. No. 37 at 54-55).  Kizer also suspected Watkins may have fired the rifle because Watkins previously was convicted of armed robbery and had been affiliated with a gang known to engage in retaliatory violence.  (*Id.* at 57-58).  Kizer concluded he needed to search Watkins's residence to determine whether Watkins possessed a weapon.[1]  (*Id.* at 58).

---

[1]  The terms and conditions of Kizer's post-release control prohibited him from possessing a firearm.  (*See* Doc. No. 27-3 at 1).

On May 24, 2024, Kizer and other officers arrived at Watkins's residence to conduct an administrative search. (*Id.* at 59). During the search, officers recovered a loaded firearm in the pocket of a coat located near a couch, as well as Watkins's cell phone. (*Id.* at 66-67, 70-71). Watkins was arrested pending a violation hearing. (*Id.* at 67-68). Kizer later searched Watkins's cell phone, where he found a brief text message exchange on April 7, 2024, between Watkins and his girlfriend in which Watkins's girlfriend told Watkins he needed "to do something with this gun." (Doc. No. 20-3 at 2). When Watkins asked his girlfriend if she could "bring it in the room," she replied, "No you need to come put it somewhere." (*Id.*).

Watkins now moves to suppress all evidence obtained during the searches of his residence and cell phone.

### III.    ANALYSIS

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 585 U.S. 296, 304 (2018). But, as Watkins concedes, (Doc. No. 20 at 2), the Fourth Amendment's "warrant and probable cause requirements generally do not apply to searches of parolees, probationers[,] or their residences." *United States v. Smith*, 523 F.3d 306, 308 (6th Cir. 2008). Courts instead seek to determine whether "[a] warrantless search of an individual under criminal supervision, including a parolee, is reasonable under the Fourth Amendment," either through the use of the "special needs" test or by "examining the totality of the circumstances." *United States v. Sharp*, 40 F.4th 749, 752-53 (6th Cir. 2022) (citations and internal quotation marks omitted). I conclude the totality of the circumstances demonstrate that the search of Watkins's residence and cell phone did not violate the Fourth Amendment.[2]

---

[2] Because only one of the two tests must be satisfied, I do not reach the parties' "special needs" test arguments.

A court considering the question of whether a warrantless search was unreasonable, thereby violating the Fourth Amendment, reviews the totality of the circumstances at the time of the search, "balancing . . . the government's interest in ferreting out crime against the individual's interest in being left alone." *United States v. Sulik*, 807 F. App'x 489, 492 (6th Cir. 2020) (citing *Samson v. California*, 547 U.S. 843, 848 (2006), and *United States v. Knights*, 534 U.S. 112, 118-19 (2001)). Probationers and parolees have diminished reasonable expectations of privacy while serving their sentences because "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at 853 (citations omitted).

The *Sulik* court noted:

In *Samson*, the Supreme Court upheld the suspicionless search of a parolee conducted under a state law that required parolees to agree to those searches as a condition of parole . . . reason[ing] that "parolees have fewer expectations of privacy than probationers because parole is more akin to imprisonment than probation is to imprisonment."

*Sulik*, 807 F. App'x at 493 (quoting *Samson*, 547 U.S. at 850) (further citation omitted).

The Supreme Court considered a California statute requiring "every prisoner eligible for release on state parole [to] '. . . agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause'" *Samson*, 547 U.S. at 846 (quoting Cal. Penal Code Ann. § 3067(a) (West 2000)). Samson was on parole following his release from incarceration arising from an illegal possession of a firearm convicted when a police officer with the San Bruno, California Police Department stopped and searched him "based solely on . . . [his] status as a parolee." *Samson*, 547 U.S. at 846-47. The search revealed Samson possessed methamphetamine. *Id.* at 847. The trial court denied Samson's challenge to the search, concluding the search was permitted by California law and "was not

'arbitrary or capricious,'" and Samson was convicted at a jury trial and sentenced to seven years in prison.  *Id.* (citation omitted).

After "[e]xamining the totality of the circumstances pertaining to [the] petitioner's status as a parolee, 'an established variation on imprisonment, . . . including the plain terms of the parole search condition,'" the Court concluded Samson "did not have an expectation of privacy that society would recognize as legitimate," while California had "an overwhelming interest in supervising parolees because parolees . . . are more likely to commit future criminal offenses."  *Id.* at 852, 853 (citation and internal quotation marks omitted) (alteration by *Samson*).

Reasoning that "California's ability to conduct suspicionless searches of parolees serve[d] its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society," the Court held "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."  *Id.* at 854, 857.

Incarcerated individuals in Ohio who return to the community on post-release control like Watkins are subject to a statutory provision substantially similar to the California law at issue in *Samson*.  Ohio law provides:

> During the period of a conditional pardon or parole, of transitional control, or of another form of authorized release from confinement in a state correctional institution that is granted to an individual and that involves the placement of the individual under the supervision of the adult parole authority, and during a period of post-release control of a felon imposed under section 2967.28 of the Revised Code, authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if any of the following apply:
>
> . . .
>
> > (b) The adult parole authority requires the individual's or felon's consent to searches as part of the terms and conditions of the conditional pardon or parole, of the transitional control, of the other form of authorized release

5

> from confinement in a state correctional institution that is granted to a person, or of the post-release control and that involves the placement of the person under the supervision of the adult parole authority, and the individual or felon agreed to those terms and conditions, provided that this division applies with respect to an individual only if the individual is a felon.

Ohio Rev. Code § 2967.131(C)(1).

Watkins's conditions of supervision required him to "agree to the warrantless search of [his] person, motor vehicle, place of residence, personal property, or property that I have been given permission to use, by my supervising officer or other authorized personnel of the Ohio Department of Rehabilitation and Correction at any time." (Doc. No. 27-3 at 1). Watkins signed those conditions after Kizer reviewed them with him, acknowledging he "fully" understood them and "agree[d] to follow them." (*Id.* at 2).

The Supreme Court of Ohio previously considered a parole condition requiring a parolee "to 'agree to a search without warrant of [his] person, [his] motor vehicle, or [his] place of residence by a parole officer at any time." *State v. Benton*, 695 N.E.2d 757, 760 (Ohio 1998) (quoting defendant's "Conditions of Confinement") (alterations by *Benton*). There, the Supreme Court of Ohio reasoned that "[a]bsent some evidence of a motive of ill will or intent to harass, we must trust a parole officer's judgment as to when a search may be appropriate, as sometimes only very subtle signs may lead a parole officer to suspect that the parolee is engaging once again in illegal activities." *Id.* at 761-62.

The *Benson* court then held that "a warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional." *Id.* at 763. *See also State v. Campbell*, 211 N.E.3d 1174, 1177 (Ohio 2022) (citing *Samson* and *Benton* for the proposition "that there is no Fourth Amendment violation when a probation officer conducts a suspicionless search pursuant to a consent-to-search provision agreed to as a condition of community control").

By agreeing to the Conditions of Supervision, Watkins waived his Fourth Amendment protection against warrantless, suspicionless searches of his residence and his cell phone.  *Cf. id.* (holding probationer's consent to searches of his "'property' . . . [p]lainly . . . encompasse[d] his cell phone'"); *United States v. Ramadan*, No. 24-1167, 2024 WL 4144497, at *3 (6th Cir. Sept. 11, 2024) (holding that defendant's "electronic devices were readily covered by . . . [a consent search] condition's capacious reference to 'any property under his control'").  Because Watkins had already consented to a search of his property, I conclude the totality of the circumstances demonstrates that the searches of his residence and cell phone were constitutional.  Therefore, I deny Watkins's motion to suppress.

## IV.    CONCLUSION

I conclude Defendant Derrick Watkins failed to show the searches of his residence and cell phone violated the Fourth Amendment.  Therefore, and for the reasons set forth above, I deny his motion to suppress.  (Doc. No. 20).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge